UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS M. BUCKOVETZ,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE NAVY,<br><br>　　　　　　　　　Defendant. | Case No.:  18-cv-2736-MDD-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION**<br><br>**[ECF No. 34]** |

Before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction, or for Summary Judgment.  (ECF No. 34).  Pursuant to Civil Local Rule 7.1(d)(1), the Court finds that oral argument is not necessary and will decide the matter on the briefs.  For the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for lack of jurisdiction and **DENIES** Defendant's Motion for Summary Judgment as moot.

## I.　　PROCEDURAL HISTORY

Plaintiff Dennis M. Buckovetz, proceeding *pro se*, filed a First Amended Complaint ("FAC") against the United States Department of the Navy alleging Defendant violated the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B).  (ECF No. 30).  In his FAC, Plaintiff alleges that Defendant closed his 2018 FOIA records request as duplicative of his 2015 FOIA request based upon Secretary of the Navy Instruction (SECNAVINST)

5720.42F.  (*See* ECF No. 30).  Plaintiff's 2018 FOIA request was administratively closed as a duplicate of his 2015 FOIA request.  (*Id.* at 3, 9).  Plaintiff appealed the administrative closure.  (*Id.* at 3, 11).  Plaintiff's appeal was denied, and the administrative closure of his 2018 FOIA request, due to the duplicative request policy, was affirmed.  (*Id.* at 3, 12-14).

Plaintiff's FAC asserts the following remaining claims for relief: (1) a declaratory statement by the Court that the Navy's duplicate request policy, under SECNAVINST 5720.42F, to be unlawful, (2) an order requiring the Navy cease complying with the policy provisions of SECNAVINST 5720.42F, and (3) attorney's fees and reasonable costs of litigation, (4) and any other relief as the Court may deem just and proper.

On January 22, 2020, Defendant answered the FAC.  (*See* ECF No. 32).  As an affirmative defense, Defendant asserted that it's duplicative request policy is a valid rule and that it did not withhold any records responsive to Plaintiff's requests.  (*Id.* at 3).

On January 17, 2020, the parties stipulated to the dismissal of Plaintiff's challenge to the adequacy of the Navy's search for records under FOIA, 5 U.S.C. § 552(a)(4)(B), without prejudice.  (*See* ECF Nos. 31, 33).  Accordingly, the remaining requests for relief are those set forth in paragraphs 14, 15, 18, and 20 of Plaintiff's FAC, regarding the legality of Defendant's policy regarding the administrative closure of duplicative FOIA requests.  (*See* ECF No. 30).

On January 22, 2020, Defendant answered Plaintiff's FAC.  (ECF No. 32).  On January 24, 2020, Defendant filed the instant motion. (ECF No. 34). On February 24, 2020, Plaintiff filed a response in opposition, (ECF No. 36), to which Defendant replied on February 28, 2020. (ECF No. 37).

## II.  STATEMENT OF FACTS[1]

On January 23, 2015, Plaintiff submitted a FOIA request, numbered DON-USMC-2015-002772 ("2015 FOIA"), to the Marine Corps Recruit Depot San Diego ("MCRD").[2]  (ECF No. 30).  Plaintiff's 2015 FOIA request was partially referred to the Marine Corps Headquarters ("MCHQ") because specific emails requested were in their control.  (ECF No. 34 at 3).  The partial referral was assigned an individual tracking number, DON-USMC-2015-003493 ("2015 MCHQ").  (*Id.*).

In response to Plaintiff's 2015 FOIA request, Defendant sent Plaintiff responsive records on March 5, 2015.  (ECF Nos. 34 at 3, 34-1 at 17).  This initial response included 319 pages of records regarding 384 individual email records.  (ECF No. 36 at 3).  On May 22, 2015, after Plaintiff informally raised concerns regarding the initial response on March 5, 2015, a second set of responsive records was sent to Plaintiff.  (ECF No. 34 at 3, 34-1 at 20, 22-24).

On September 3, 2018, Plaintiff filed a FOIA request, numbered DON-USMC-2018-011145 ("2018 FOIA"), seeking identical information to his 2015 FOIA request.  (ECF Nos. 30 at 8, 34-1 at 4).  Plaintiff submitted the 2018 FOIA request to allow for a comparison with the email records provided in

---

[1]  Regarding the motion to dismiss for lack of jurisdiction, the Court analyzes a facial attack by accepting the allegations of the complaint as true and drawing all reasonable inferences in favor of Plaintiff.  *See Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).  Where a material fact is in dispute, it will be so noted.

[2]  The 2015 FOIA requested "all email messages dated on or after 1 May 2014 that have any of the following email addresses Mark.Tull@usmc.mil, Jim.Gruny@usmc.mil, Michael.Lee@usmc.mil, james.Bierman@usmc.mil, Thomas.W.Spencer@usmc-mccs.org, and John.Ming@usmc.mil on the 'From:', 'To:', 'Cc:' or 'Bcc:' lines AND contain the word 'coin' or 'coins' on the subject line or within the body of the message."  (ECF No. 30 at 2, 7).

3

2015 claiming that some responsive records were withheld, either improperly or mistakenly, in response to his 2015 request. (ECF No. 30 at 3). On September 17, 2018, MCRD administratively closed his FOIA request stating that in light of their previous responses to Plaintiff's 2015 FOIA and 2015 MCHQ requests, they consider the current request to be duplicative. (ECF Nos. 30 at 3, 9, and 34-1 at 32).

Plaintiff appealed the administrative closure of his FOIA request. (ECF No. 30 at 3, 11). On appeal, Plaintiff clarified that his 2018 FOIA was intended to duplicate his 2015 FOIA submitted to MCRD in 2015, but not his 2015 MCHQ request. (ECF No. 34-1 at 35). Plaintiff specifically asserted that the case of Thomas W. Sikes v. United States Department of the Navy, applies. *Id.* (referring to *Sikes v. United States Dep't of the Navy*, 896 F.3d 1227 (11th Cir. 2018) (finding that an agency's refusal to grant a request for records in its control is a "withholding," even if the agency knows the records are otherwise available to or in the possession of the requester.))[3]. On October 4, 2018, MCRD upheld its duplicative closure policy on appeal, under Section 11n of SECNAVINST §5720.42F. (ECF Nos. 30 at 3, 12-14, 34-1 at 15, 38).

On October 19, 2018, an unidentified individual with the same address as Plaintiff filed a FOIA request, numbered DON-USMC-2019-000608, for the same records requested in [Plaintiff's] 2015 and 2018 FOIA requests. (ECF Nos. 36 at 4, 34-1 at 5). While searching for records responsive to that

---

[3]   *Sikes* is not analogous to the instant case. In *Sikes*, the Defendant refused to provide Plaintiff with any records in response to his request seeking identical information, because they had already provided him with responsive records to his initial request. Whereas here, Defendant provided plaintiff with responsive records in response to his request, despite the administrative closure as duplicative .

request, an additional 106 pages of records in formats not previously produced to Plaintiff were discovered.  (ECF No. 34-1 at 5).  On June 14, 2019, Defendant provided the additional 106 pages to Plaintiff in response to his 2018 FOIA request.  (*See* ECF Nos.  34-1 at 5, 42, and 36 at 5, 41-43).

On September 25, November 4, and November 11, of 2019, Plaintiff filed three separate FOIA requests to Defendant targeting individual email accounts and seeking identical information as his 2015 and 2018 FOIA requests.  (*See* ECF No. 34-1 at 6-7, 36 at 5-6).  Plaintiff asserts that these requests "duplicated [his] 2015 and 2018 requests except that [they were] limited to [their respective] email addresses ...."  (ECF No. 36 at 5-6).  Accordingly, Defendant administratively closed each request as a duplicate.  (*Id.*).

## III. LEGAL STANDARD

A Federal Rule of Civil Procedure 12(b)(1) motion to dismiss allows for dismissal of a complaint for lack of subject matter jurisdiction.  Subject matter jurisdiction must exist when the action is commenced.  *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).  Further, subject matter jurisdiction may be raised "at any stage of the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").  A party may properly challenge standing in a Rule 12(b)(1) motion given standing "pertain[s] to a federal court's subject matter jurisdiction under Article III." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

A facial attack on jurisdiction asserts that the allegations in a complaint are insufficient to invoke federal jurisdiction, whereas a factual attack disputes the truth of the allegations that would otherwise confer

federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In resolving a facial challenge to jurisdiction, the Court accepts the allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Doe*, 557 F.3d at 1073 (citing *Wolfe*, 392 F.3d at 362). In resolving a factual attack, the Court may examine extrinsic evidence "without converting the motion to dismiss into a motion for summary judgment," and the Court need not accept the allegations as true. *Safe Air for Everyone*, 373 F.3d at 1039; *see also Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as they exist.").

However, a Rule 12(b)(1) motion is "not appropriate for determining jurisdiction . . . where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). When there is an entanglement, determination of the jurisdictional issue should be determined "on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077. Unless the summary judgment standard is met, the disputed jurisdictional fact "must be determined at trial by the trier of fact." *Id.*

## IV. DISCUSSION

The Court previously denied a motion by Defendant to dismiss Plaintiff's claims as moot. (*See* ECF Nos. 9, 13). The Court found that the "record at this stage in the litigation does not support a finding that Plaintiff's claims are moot with respect to" his 2018 FOIA request and SECNAVINST 5720.42F. (*Id.* at 5). The posture of the case, however, has

changed. Plaintiff has dismissed his claims regarding the adequacy of the search for responsive records conducted by Defendant. With this change in circumstances, Defendant now contends that Plaintiff lacks standing to challenge Defendant's administrative closure of his duplicative FOIA request pursuant to SECNAVINST 5720.42F. (*See* ECF No. 34).

Standing is the "irreducible constitutional minimum" necessary to make a justiciable "case" or "controversy" under Article III, § 2, of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements,

> a plaintiff must show (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180-181 (2000) (citing *Lujan*, 504 U.S. 555 at 560-661). Here, neither party debates causation or redressability. The parties only contest the showing of an injury in fact as it relates to standing.

In *Hajro v. U.S. Citizenship & Immigration Servs.,* the Ninth Circuit specifically defined Article III's "injury in fact" standing requirements for FOIA claims. *See Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1102–03 (9th Cir. 2016). *Hajro* placed FOIA claims into two categories: "specific" claims and "pattern and practice" claims. *Id.* A pattern or practice claim may arise where a plaintiff alleges that he regularly files FOIA requests with a certain agency, but that agency consistently fails to respond to those requests in a timely fashion. *Civil Beat Law Ctr. For the Pub. Interest, Inc. v. CDC & Prevention*, 929 F.3d 1079, 1086 (9th Cir. 2019). For a "specific" claim, a plaintiff has standing by alleging that they made a request

for records that was improperly denied. *Pub. Citizen v. DOJ*, 491 U.S. 440, 449 (1989) (analogizing in non-FOIA case that all that is required to establish standing under FOIA is for requesters to show "that they sought and were denied specific agency records.").

A unique feature of a pattern or practice claim is that it is not necessarily mooted by an agency's production of documents. *See Payne Enters., Inc. v. United States*, 837 F.3d at 491 (D.C. Cir. 1988) (holding "even though a party may have obtained relief as to a specific request under the FOIA, this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future"). Specifically, the claim will survive where it alleges that an "agency policy or practice will impair the party's lawful access to information in the future." *Hajro*, 811 F.3d at 1103 (quoting *Payne*, 837 F.3d at 491). Policy or practice claims stem from an agency's policy of violating FOIA rather than from the results of a particular request (such as a claim where the agency has withheld requested material under an inapplicable exemption). *Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 858, 874 (2019).

*Hajro* established a three-part test for determining whether a plaintiff alleging that an agency engages in a "pattern or practice" of violating FOIA requests has shown injury in fact sufficient to confer standing. The court of appeals stated that injury in fact is shown, regardless of whether the specific claim is mooted by production of records, if plaintiff demonstrates that:

> (1) the agency's FOIA violation was not merely an isolated incident,
> (2) the plaintiff was personally harmed by the alleged policy, and
> (3) the plaintiff himself has a sufficient likelihood of future harm by the policy or practice.

*Hajro*, 811 F.3d at 1102–03.

Plaintiff asserts that he has suffered an injury in fact due to the administrative closure of his 2018 FOIA request. (*See* ECF No. 36). Plaintiff asserts that Defendant engages in a pattern and practice of unlawfully closing duplicate FOIA requests, pursuant to SECNAVINST 5720.42F. For his pattern and practice claim to survive, Plaintiff must satisfy the *Hajro* three-prong test.

A plaintiff can satisfy the first prong of the *Hajro* test, requiring a showing that the violation was "not merely an isolated incident," by providing evidence that he has been subjected to a FOIA violation more than once.[4] *Animal Legal Def. Fund v. United States Dep't of Agric.,* 933 F. 3d 1088, 1093 (9th Cir. 2019) (citing *Hajro*, 811 F.3d at 1103). A plaintiff may also provide the court with affidavits of those similarly situated to the them who were also harmed by the violation. *Hajro,* 811 F.3d at 1104.

Defendant apparently concedes that Plaintiff has satisfied the first prong by arguing only that Plaintiff cannot establish elements (2) and (3) of the *Hajro* standard. (*See* ECF No. 34 at 6). Defendant administratively closed Plaintiff's initial 2018 FOIA request as a duplicate, along with three individual FOIA requests he submitted in 2019.[5] The Court agrees that Plaintiff has his burden under the first prong of the *Hajro* test showing that this "was not merely an isolated incident."

The second prong of *Hajro's* test, requiring a showing that plaintiff was "personally harmed," is met if the plaintiff personally filed a request, and that request was denied by the policy and records were withheld. *Hajro,* 811

---

[4] As in *Hajro*, the "first prong overlaps with the merits of a pattern or practice claim, we comment only on the standing aspect here." *Hajro,* 811 F.3d at 1103.

[5] Plaintiff filed three individual FOIA request on September 25, November 4, and November 11, of 2019, requesting identical information as his 2015 and 2018 FOIA request except that they targeted individual emails.

F.3d at 1104.  "The failure to get information is in itself a concrete injury." *Id.* at 1105 (citing *FEC v. Akins*, 524 U.S. 11, 21, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998)).  In addition, an agency's delay in responding to a FOIA request can be an injury because FOIA requires agencies to provide for expedited processing of requested records if the requestor "demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i)(I).  As relevant here, "the term 'compelling need' means . . . that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to *the life or physical safety of an individual*[.]" §552(a)(6)(E)(v)(I) (emphasis added); *Animal Legal Def. Fund,* 935 F.3d at 1093.

     Defendant contends that Plaintiff was not personally harmed by the policy because although it was invoked in response to his 2018 FOIA request, Defendant continued to provide responsive records pursuant to that request as they were discovered.  (ECF No. 34 at 6).  Defendant also asserts that they have taken substantial efforts to ensure that Plaintiff received all responsive records.  *Id.*  (*See* ECF No. 34-1).[6]  Accordingly, although the policy was invoked, there is no evidence that records were withheld.  Plaintiff continued to receive responsive records identified after the administrative closure.  In opposition, Plaintiff argues that he was personally harmed by the duplicate

---

[6] In support of this, Defendant submitted the declaration of Cinthia Camacho, the FOIA specialist in charge of Plaintiff's FOIA requests.  (*See* ECF No. 34-1).  The Declaration includes a detailed account of all of the steps taken by Defendants to respond to each of plaintiff's FOIA requests.  *Id.*  The Declaration indicates that Defendants searched appropriately and exhaustively for the document's Plaintiff was seeking and then sent him copies of all of the responsive documents that were located.  *Id.*

request policy because he was denied responsive records and did not receive timely responses. (ECF No. 36 at 11).

At first blush, it appears that Plaintiff was harmed by the denial of his 2018 FOIA request due to the administrative closure of his request. But, after the closure, Defendant continued to provide Plaintiff with responsive records identified in other searches. (*See* ECF Nos. 34-1 at 5, 42, and 36 at 5, 41-43). In doing so, Defendant did not enforce the duplicative request policy as to Plaintiff's requests. Had Defendant withheld documents due to the administrative closure that were discovered later in other searches, Plaintiff would have suffered a concrete injury. It bears repeating that Plaintiff has withdrawn his claims that Defendant's search for responsive records in response to his request was inadequate. And, despite his assertion that he has been denied responsive records, there is nothing in the record to support the allegation that records were or have been withheld. Defendant continued to service Plaintiff's 2018 FOIA request even after administratively closing the claim under its policy. The closure had no effect and, consequently, Plaintiff was not personally harmed by the administrative closure of his 2018 FOIA request under SECNAVINST §5720.42F.

To clarify, the Court is not holding that Plaintiff lacks standing because he received responsive records. If that were the case, no pattern and practice claim could survive if the agency ultimately produced responsive records. The *Hajro* court recognized that a pattern or practice claim is not necessarily mooted by an agency's production of documents. *Hajro*, 811 F.3d at 1103. For example, a pattern and practice claim may survive if the agency routinely denies proper claims on patently frivolous bases only producing information pursuant to court orders. A pattern and practice claim may survive if an agency needlessly and without justification otherwise delays production of

records.  *See Hajro*, 811 F.3d at 1106.  Plaintiff suggests that he was personally harmed because he did not receive a "timely" response to his 2018 FOIA request.  Plaintiff did not administratively exhaust his claim of receiving an untimely response to his 2018 FOIA request, nor raise it in his Complaint.  Consequently, the Court will not address timeliness.  The reason that Plaintiff lacks standing here is because the assertion of the duplicative request policy in connection with his 2018 FOIA request had no impact on the production of responsive records to Plaintiff.[7]

Accordingly, Plaintiff was not personally harmed and fails the second *Hajro* prong.  Consequently, the Court lacks subject matter jurisdiction to hear his claim.  Defendant's Motion to Dismiss is **GRANTED.**

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss the First Amended Complaint for lack of jurisdiction and **DENIES** Defendant's Motion for Summary Judgment as moot.  The First Amended Complaint is **DISMISSED** with prejudice as any amendment would be futile.  Accordingly, the CLERK OF THE COURT is instructed to close this case.

**IT IS SO ORDERED.**

May 7, 2020

_____
Hon. Mitchell D. Dembin
United States Magistrate Judge

---

[7]   The denials of his 2019 requests based on the duplicative policy would have served as support for a finding on prong (3) of the *Hajro* test (likelihood of future harm).  The Court is not reaching prong (3), however, because of its ruling that Plaintiff failed on prong (2).  Whether or not the assertion of the policy in connection with the 2019 requests would support a policy and practice claim is not before the Court.